IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CARL CLOUD, et al.**,

    Plaintiffs,

    v.

**EMC MORTGAGE CORPORATION, et al.,**

    Defendants.

No. 3:10-cv-00818-MO

OPINION AND ORDER

    **MOSMAN, J.,**

    Plaintiffs, Carl and Eileen Cloud, prevailed on one of two Truth in Lending Act ("TILA") claims at summary judgment. Because the Clouds prevailed on their 15 U.S.C. § 1641(f)(2) TILA claim, they are entitled to statutory damages of not less than $400.00 or greater than $4,000.00, and the cost of the action, together with reasonable attorney fees as determined by the court. 15 U.S.C. §§ 1640(a)(2)(A)(iv), 1640(a)(3). The Clouds now seek $4,000.00 in statutory damages, $7,334.50 in attorney fees, and $517.34 in costs.

## BACKGROUND

    The Clouds brought two claims against defendants: 1) a claim, pursuant to 15 U.S.C. § 1635, to rescind their mortgage, and 2) a claim alleging a violation of 15 U.S.C. § 1641(f)(2) by failing to properly respond to a request they sent to their mortgage servicer, EMC Mortgage

1 – OPINION AND ORDER

Corporation ("EMC"). I granted in part and denied in part defendants' and the Clouds' motions for summary judgment, holding the Clouds did not have a right to rescind but defendants violated U.S.C. § 1641(f)(2) by failing to identify the "owner of the obligation" when plaintiffs asked them to do so. Specifically, they sent a letter on May 19, 2010, asking EMC to identify the master servicer and "the entity who currently owns the mortgage." (Takla Decl. [42] Ex. 3). EMC responded on June 3, 2010, identifying the master servicer and stating that the "loan was sold into a public security managed by Bank of America as trustee for EMC" and the security might have a "number of investors." (Takla Decl. [42] Ex. 2). This was insufficient, I held, because identifying the managing trustee is not the same as identifying the "owner of the obligation." In light of my ruling, I requested combined briefing on the proper amount of statutory damages and fees.

## DISCUSSION

### I. Statutory Damages

The Clouds seek the maximum statutory damages of $4,000.00 for the TILA violation to send a clear message that such violations will not be tolerated. They argue that the purpose of the statute is to provide economic incentive for creditors to comply with the requirements. Additionally, they contend that § 1641(f)(2) is a straight-forward and clear provision and that defendants' violation was egregious. The Clouds argue that knowledge of who the owner of their obligation was would have enabled them to give proper notice of rescission, find out potentially valuable information regarding their loan, and uncover that EMC had previously owned their loan.

Conversely, defendants request the statutory minimum of $400.00 be awarded to the Clouds. They argue that the violation was "slight" and that the statute was "unclear." (Def.'s Resp. [72] 2). They claim plaintiffs' argument is flawed because it is based on conduct during

the litigation and such conduct should have no bearing on the statutory award because a party has a right to defend itself in a lawsuit. Finally, defendants contend that the remedial nature of statutory damages is not well served when creditors or servicers are trying to comply with their obligations and their mistake causes no harm.

"[W]hen a plaintiff seeks statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harry & David v. Pathak*, No. 09-3013-CL, 2010 WL 4955780, at *5 (D. Or. Oct. 29, 2010) (quoting *Columbia Pictures Television, Inc. v. Kryptan Broad. of Birmingham, Inc.*, 259 F.3d 1186,1194 (9th Cir. 2001)). In exercising its discretion, the court should be mindful of the policy behind the statute at issue. *Id*. In determining the statutory damages award in a Migrant and Seasonal Agricultural Worker Protection Act violation case, the Ninth circuit considered: "1) the amount of [actual damages] award[ed] to each plaintiff, 2) the total [actual damage] award, 3) the nature and persistence of the violation, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violation, and 7) the circumstances of each case." *Martinez v. Shinn*, 992 F.2d 997, 999 (9th Cir. 1993) (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)). I find these considerations helpful in this case.

One purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). This case involved one plaintiff and one violation, as opposed to multiple violations or a class action. Defendants made an effort to comply with the statute but failed to identify the owner of the obligation. The nature of the violation, however, was minor and the Clouds have not explained any real harm or prejudice

3 – OPINION AND ORDER

from the violation. Additionally, TILA does not define "owner," and thus it was not entirely clear who defendants were required to identify. Defendants identified the trustee who managed the public security that held the mortgage instead of the owner; and they identified the servicer of the loan. For these reasons, I award the Clouds the $400.00 statutory minimum.

## II.    Attorney Fees & Costs

### a.  *Standard: Attorney Fees*

In determining a reasonable award of fees under § 1640(a)(3), the lodestar analysis, "in which the court determines a reasonable rate and multiplies it by the number of attorney hours reasonably expended on the case," is the proper method. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 891 (9th Cir. 2011). The party seeking an award of fees must submit evidence to support the number of hours worked and the rates claimed. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation omitted). A "strong presumption" exists that the lodestar amount represents a "reasonable fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted). After calculating the lodestar, twelve factors are considered to determine whether it is necessary to adjust the presumptively reasonable lodestar figure. The twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (quoting *Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)). The court is not required to revisit factors already subsumed in the lodestar determination. *See id.* at 364 n.9. While the court should consider the factors established by *Kerr*, it does not need to discuss each factor. *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983) (citing *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 838 (9th Cir. 1982)).

    b.  *Analysis*

        i.  **Calculation of Lodestar**

Defendants do not dispute the plaintiffs' counsels' hourly rates. The rate for Mr. Phil Goldsmith, who served as an attorney fees expert, is $350 per hour. The rate for Ms. Nanina Takla is $250 per hour. "The law is well established that the reasonable rate for legal services is 'to be calculated according to the prevailing market rates in the relevant community.'" *Atl. Recording Corp. v. Anderson*, No. 05-933-AC, 2008 WL 2536834, at *13 (D. Or. June 24, 2008) (quoting *Blum v. Stetson*, 465 U.S. 886, 895 (1984)). The "bellwether" of attorney rates used by this court is the Oregon State Bar 2007 Economic Survey ("Economic Survey"). *Atl. Recording Corp.*, 2008 WL 2536837, at *14 (quoting *McElmurry v. U.S. Bank Nat'l Assoc.,* No. 04-642-HA, 2008 WL 1925119, at *3 (D. Or. Apr. 30, 2008)).

Mr. Goldsmith is a graduate of Yale Law School and has practiced for over 30 years. (Pl.'s Statement [70] 7). According to the Economic Survey, the median hourly billing rate of an attorney in Portland with over 30 years of experience is $300 while attorneys at the 75th percentile bill at $350 per hour and attorneys at the 95th percentile bill at $461 per hour. In *Jansen v. Experian Info. Solutions, Inc.*, No. 05-385-BR, 2011 WL 846876, at *3 (D. Or. March 9, 2011), the court found an attorney's requested rate of $400.00 per hour was reasonable for an

attorney with 25 years of experience and extensive experience with the Fair Credit Reporting Act. Mr. Goldsmith apparently has extensive experience with fee issues[1] and the Economic Survey was compiled over four years ago. Therefore, I find his rate reasonable.

Ms. Takla has been practicing law since 1999 and has six years of mortgage foreclosure defense, bankruptcy, and consumer law experience. (Pl.'s Statement [70] 8). According to the Economic Survey, the median hourly billing rate of an attorney in Portland with 10–12 years of experience is $250 per hour. Based on the Economic Survey, Ms. Takla's $250 per hour rate is the median rate for an attorney with her years of experience and defendants do not dispute that this is reasonable. Therefore, I find Ms. Takla's rate reasonable.

The Clouds request compensation for 28.13 hours of work performed by the attorneys: 25.11 by Ms. Takla and 3.02 by Mr. Goldsmith. The hours expended were determined by calculating the relative percentage of the different work product that was specifically devoted to the successful TILA claim. Although the percentage applied to each billing entry is unclear, defendants do not oppose the methodology in general. The relative percentages applied to the work generated ranges from 8% to 25% for different steps of the litigation. The plaintiffs' calculation reasonably accounts for the varying amounts of time that was spent on their successful claim. Therefore, I find the hours expended on the TILA violation reasonable.

### ii. Reduction of the Lodestar

The hourly rates multiplied by the respective hours expended total $7,334.50. Defendants argue that the TILA violation was a minor part of the Clouds' lawsuit and ask that the attorney fees (and costs) be limited to $5,000. I construe this as an argument that the *Kerr* factors warrant a departure from the basic lodestar calculation. The relevant *Kerr* factors to

---

[1] Mr. Goldsmith was the attorney-fee expert in *Jansen* and the court noted that he extensively surveys fee awards in Oregon. *Jansen,* 2011 WL 846876, at *3.

6 – OPINION AND ORDER

consider include the novelty and difficulty of the question and the plaintiffs' success. The parties cited no authority on the question raised by the alleged TILA violation and it involved a somewhat ambiguous statute. Although the Clouds had limited success overall, I find they appropriately accounted for this fact in their lodestar calculations and the lodestar should not be reduced.

        **iii.   Cost**

Other than the broad request that I reduce plaintiffs' overall award, discussed above, defendants raise no objection to the $517.34 in costs plaintiffs seek. Having rejected that argument, I award plaintiffs the full amount of costs they seek.

## CONCLUSION

For the reasons stated above, I award the Clouds $400.00 in statutory damages, $7,334.50 in attorney fees, and $517.34 in costs. Plaintiffs are directed to submit a judgment reflecting my summary judgment ruling and the statutory damage award.

IT IS SO ORDERED.

DATED this   25th   day of April, 2012.

                                              /s/ Michael W. Mosman
                                              MICHAEL W. MOSMAN
                                              United States District Court